IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARAMARK HEALTHCARE SUPPORT SERVICES, LLC<br><br>Plaintiff,<br><br>v.<br><br>WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC d/b/a VISTA HEALTH SYSTEM,<br><br>Defendant. | CASE NO. 1:25-cv-06361<br><br>Judge Joan B. Gottschall<br><br>Magistrate Judge Gabriel A. Fuentes |

**SUR-REPLY IN OPPOSITION TO SECOND MOTION
SEEKING TO VACATE THE DEFAULT JUDGMENT**

Plaintiff Aramark Healthcare Support Services, LLC ("Plaintiff" or "Aramark") files this sur-reply in opposition to Defendant Waukegan Illinois Hospital Company, LLC's ("Defendant" or "Waukegan") Motion to Vacate the Default Judgment previously entered in this matter (the "Motion"). (ECF No. 31.)

**I. INTRODUCTION**

The Court has already agreed with Aramark that Vista's Motion and the Burket Affidavit lack the specificity required to show a meritorious defense under Seventh Circuit precedent, specifically *Acosta v. DT & C Global Management, LLC*, 874 F.3d 557, 562 (7th Cir. 2017). Perhaps recognizing this fatal flaw, Vista scrambled to cobble together some semblance of a defense to raise for the first time in its reply brief, which is improper and should be disregarded. But far from establishing a meritorious defense, Vista concedes that it owes Aramark a minimum of $3,827,362.33. (ECF No. 35-1, George Affidavit at ¶ 4.) ("[T]he balance due in Vista's records . . . is $3,827,362.33.").

15055061 v3

Regarding its alleged meritorious defense to the remaining balance, Vista incorrectly claims it never received the invoices comprising that amount without ever actually disputing their validity. (*Id.* at ¶ 9.)[1] Then, out of a judgment that exceeds $5.9 million, it takes issue with approximately $54,000 in finance charge invoices. These arguments confirm that which is readily apparent: Vista does not have a defense to the claims at issue and is simply seeking to delay this matter and its obligations to pay the valid judgment entered against it.

With respect to Vista's first argument, Vista concedes it is liable to Aramark for *at least* $3.8 million in damages. Vista, incorrectly, claims that it has not had the opportunity to review and dispute the invoices for the remaining balance, which totals approximately $974,000. Vista articulates no dispute in support and fails to clearly specify which invoices make up the $974,000 it questions. More problematic, Vista's lack of opportunity argument is made during its *fifth* opportunity to identify a meritorious defense after it failed to do so (1) in response to the complaint; (2) its first motion to vacate; (3) its failure to file a reply in support of its first motion; (4) its second motion to vacate; and (5) its reply in support of its second motion. Rather than tie its arguments to any facts or provisions of the governing contract, Vista elects to shrug its shoulders and effectively say the charges may or may not be due and owing. The Court should not indulge Vista's repeated lack of diligence.

With respect to prejudgment interest, Vista identifies two discrepancies in a ledger that– once corrected–result in an *increase* in the judgment amount. Even if the Court were to eliminate the prejudgment interest Vista disputes, it would result in a $64,000 reduction in the $5.9 million

---

[1] As the Court recognized, Vista presented new exhibits for the first time in its reply brief to its second motion. As will be shown below, Aramark was able to disprove Vista's position with respect to significant invoices from September/October of 2024. Given these new exhibits, lack of clarity in Vista's arguments, and the short amount of time to investigate and respond, Aramark would likely be able to demonstrate that Vista received all the invoices at issue with additional time.

judgment. Rather than reopening this matter to litigate $64,000 on what would still be a $5.8 million judgment, Aramark would simply concede the issue and amend the judgment to remove the small amount of interest Vista disputes.

The Court has provided Vista with multiple opportunities to meet its burden to set aside the default judgment. After several months and multiple rounds of briefing, the best it can offer is that it might have a defense. Vista has again failed to carry its burden, and the Court should deny the Motion.

II.     **ARGUMENT**

    **A. Instead of Offering a Valid Defense, Vista Argues that the Invoices May or May not be Valid, which Does Not Meet Its Burden.**

At the outset, Vista concedes that approximately $3.8 million of the principal balance is valid and owed to Aramark. Tellingly, nowhere in Vista's Motion does it actually contest the remaining invoices totaling $974,262.08. It does not raise a contractual defense or cite to specific facts. Instead, the sum and substance of Vista's meritorious defense is that it "never received" those invoices and it has not had the opportunity to determine if it actually has a defense. (ECF No. 35-1, George Affidavit at ¶ 8.) (claiming Vista never received the invoices and "has not had the opportunity to ascertain whether the charges are accurate or appropriate pursuant to the Agreement, nor has [Vista] been provided any opportunity to dispute these invoices.") Aside from being inaccurate, Vista's position again fails to carry its burden.

Similar to the defect in its principal brief, Vista's reply falls far short of the requirement to present a developed, legally cognizable defense supported by specific facts. Once more it ignores the legal principle that conclusory denials or vague assertions regarding damages do not suffice as a meritorious defense must contain more than "bare legal conclusions." *Acosta v. DT & C Glob.*

3

*Mgmt.*, LLC, 874 F.3d 557, 562 (7th Cir. 2017). Here, none of Vista's assertions are tied to operative contract language or facts establishing any form of defense, legal or otherwise. Rather than making such a showing, it again relies on amorphous claims of nonreceipt and a lack of opportunity to evaluate invoices it has had access to for–at minimum–several months.

For instance, aside from finance charge invoices, Vista claims that some of the invoices are dated after the parties' contract was terminated on September 10, 2024, but does not explain why that is relevant.[2] Indeed, Vista's claim that it never received these invoices and can only speculate as to what they represent is simply false. (ECF No. 35 at p. 2.) On October 9, 2024, Aramark provided copies of the invoices along with supporting information to Vista's Chief Operating Officer, Kim Needham, via email. (*See* email dated October 9, 2024, with attachments, true and correct copies of which are attached as Exhibit 1.)[3]

Even setting the complete lack of merit regarding nonreceipt, the date of the invoices is a red herring. The invoices are for food services and environmental management services ("EVS"), which is reflected in the invoices as "Vista Food" and "Vista EVS". (ECF No. 13-4 at pp. 77, 79.) The invoices were issued within seven days after the close of the last "Accounting Period," which was September 2024, and reflect services rendered up to and until the termination date. Aramark's issuance of these invoices is consistent with the terms of the parties' contract.[4] At the latest, Aramark provided the invoices to Vista on October 9, 2024. *See* Ex. 1. Despite having over a year

---

[2] These appear to be invoice KC01052475, KC010528272, 100323022, and 1003230223. (*See* ECF No. 13-4 at pp. 77, 79-82.)

[3] See also LinkedIn profile of Kim Needham, a true and correct copy of which is attached as Exhibit 2, taken from https://www.linkedin.com/in/kim-needham-9286a927b/, last visited February 17, 2026.

[4] (*See* ECF No. 14 at Ex. B.) Section 10.2 of the parties' agreement defines "Accounting Period" as a calendar month. (*Id*. at § 10.2). The agreement provides that Aramark will invoice Vista within seven days of each Accounting Period. (*Id*. at § 6(b).) Vista's payment obligations for food services and EVS are set forth in the Exhibits A and B to the agreement, respectively. (*See* ECF No. 14 at Ex. B, pp. 13-32.)

to identify a dispute, Vista fails to address the contract or provide any analysis. Instead, Vista falls back on its lack of opportunity argument, which is meritless, and leaves Aramark and the Court to guess at the arguments Vista is making.

As a result, Vista's position remains a generalized, amorphous claim: the invoices *may* be accurate and *may* be due and owing, but Vista is not sure because it has not had the opportunity to review and dispute them. Vista's claim cannot be taken seriously as it has had *every* opportunity to demonstrate a legitimate dispute:

- Aramark served Vista with the complaint *over seven months ago* on June 11, 2025, and Vista failed to take any action. (*See* ECF Nos. 7, 10.)

- Vista filed its *first* motion seeking to set aside the default judgment on November 21, 2025, but failed to raise a meritorious defense or dispute the invoices. (ECF No. 24.) Those invoices have been a matter of public record *since August 13, 2025*. (ECF No. 13-4.) With respect to the invoices dated September/October of 2024, Vista has had those invoices since *at least* October of 2024. *See* Ex. 1.

- Aramark opposed the first motion due to a lack of a meritorious defense. Rather than respond, Vista failed to file a reply brief or raise any issues with the invoices. (ECF No. 26.)

- The Court denied Vista's first motion and offered Vista another opportunity to raise a meritorious defense, which it again failed to do when it filed its second motion. (ECF Nos. 31, 24, 36.) For the first time in its Reply, Vista belatedly challenged a portion of damages but accepted liability for $3.8 million.[5]

---

[5] (*See* [Minute Entry from the Honorable Joan B. Gottschall:] ("The court agrees with plaintiff [34] that the non-specific representations and assertions made in defendant's second motion to set aside default judgment. . . well as the

Aramark and the Court have provided Vista with multiple opportunities to review and dispute the invoices. After multiple rounds of briefing and months to review, the most Vista can muster is a vague claim that it is not sure if certain invoices are valid based on a lack of receipt. But its claim that it did not receive some of the invoices from September/October of 2024 is demonstrably false. *See* Ex. 1. At the same time, Vista does not contest any of the actual evidence Aramark filed in this matter in support of a default judgment aside from questioning prejudgment interest on a handful of invoices.

Vista's reply has the same fatal flaw as its first two principal briefs, falling far short of the requirement to present a meritorious defense and repeating its pattern of non-responsiveness. It does not cite any contractual language, provision, or even specific facts that indicate any real dispute. At best, Vista's reply asks for discovery in hopes of finding a defense, which is insufficient to meet its burden. A request for discovery is not a substitute for a meritorious defense. Indeed, Vista instead concedes $3.8 million is due and owing and asks the Court to further indulge its efforts to identify a defense to the remainder when Vista clearly has none. Accordingly, Vista's Motion should be denied.

### B. Vista's Dispute Regarding Prejudgment Interest is Inadequate to Set Aside the Judgment.

Vista goes on to claim that there are discrepancies in the documents Aramark provided. It then identifies two instances where the invoices have different due dates than what is reflected in Aramark's ledger.[6] Aramark notes that the ledger it provided (ECF No. 13-5.) does have a

---

averments of the accompanying affidavit of Jonathan Burket. . . lack the specificity required to carry defendant's burden to show that it has a meritorious defense. . . Ordinarily, arguments and evidence presented for the first time in a reply are waived because the opposing party has no opportunity to respond.") (internal citations omitted).)

[6] Vista claims there are other discrepancies but fails to identify them. The Court should not consider such generalized claims given the number of opportunities it has provided Vista to articulate a defense supported by specific arguments.

formatting error; the invoice numbers in the second column ("Invoice No.") were not correctly lined up with due date and balance due columns of that ledger. This resulted in three out of approximately seventy-seven invoices having the wrong due date in the ledger. A corrected version has been provided with this sur-reply, which shows that fixing the issue actually *increases* the prejudgment interest from $1,129,689.43 to $1,133,879.33. An amended spreadsheet calculating invoice totals plus prejudgment interest is attached to this sur-reply as Exhibit 3. So, Vista's discrepancies argument only results in a higher prejudgment interest amount.

With respect to Vista's claim that Aramark cannot charge compound prejudgment interest, the operative agreements provide that any unpaid portion of an "invoice" will bear interest until the "invoice" is paid. (ECF No. 14, at Ex. B, § 6(e).) Here, Aramark issued invoices, which Vista did not pay. Vista's failure to pay invoices amounts triggered interest on those invoiced amounts pursuant to the parties' agreement. Pursuant to the agreement, interest accrues on past due invoices whether the invoices are for finance charges or for services. (*See id.*)

To the extent the Court is inclined to agree with Vista's prejudgment interest argument, Aramark will waive the finance charge invoices, which total approximately $54,000 out of the $4.8 million in invoices at issue.[7] Removing those invoices and any related prejudgment interest charged on them, reduces the judgment from $5,931,314.14 to $5,868,945.90. A spreadsheet with the finance charge invoices removed is attached as Exhibit 4. Aramark does not object to an

---

[7] (*See* ECF No. 13-4 at pp. 32-73.) (Invoice Nos. FC1027618, FC1029400, FC1031192, FC1032984, FC1034843, FC1036878, FC1038946, FC1041056, FC1043119, FC1045206, FC1047383, FC1049458, FC1051473, FC1053482, FC1027619, FC1029401, FC1031193, FC1032985, FC1034844, FC1036879, FC1038947, FC1041057, FC1043120, FC1045207, FC1047384, FC1049459, FC1051474, FC1053483, FC1027620, FC1029402, FC1031194, FC1032986, FC1034845, FC1036880, FC1038948, FC1041058, FC1043121, FC1045208, FC1047385, FC1049460, FC1051475, FC1053484.)

amended judgment in that amount, which eliminates any argument Vista has regarding compounding prejudgment interest and further warrants denying the Motion.

### III. CONCLUSION

In seeking default judgment, Aramark submitted the governing contract, invoices, and a detailed supporting affidavit. (ECF Nos. 13, 14.) The judgment rested on those materials. Vista's reply quarrels with notice and receipt of certain invoices and interest calculations but still identifies no contractual limitation, no legal bar to liability, and no specific, admissible facts establishing a complete or partial legal defense as required by Seventh Circuit authority. After multiple opportunities, Vista cannot even determine if it actually disputes any of the invoices. It is clear that Vista has no defense and is simply seeking to delay this matter as much as possible. Accordingly, Vista's Motion should be denied.

                                                           **FLASTER GREENBERG, P.C.**

By:   /s/ *Eric C. Palombo*
       Eric C. Palombo
       Eric.Palombo@flastergreenberg.com
       Flaster Greenberg, P.C.
       100 Front Street, Suite 100
       Conshohocken, PA 19428
       Telephone: (215) 320-3728
       Fax: (610) 260-4447
       *Attorneys for Plaintiff,*
       *Aramark Healthcare Support Services, LLC*

Date: February 17, 2026